# IN THE UNITED STATES OF DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MATTHEW DON WATERDOWN and<br>2. SHERRY WATERDOWN, Individually and as<br>3. Next best friends of M.C. WATERDOWN,<br>                Plaintiffs,<br><br>vs.<br><br>1. DAGOBERTO CHAVEZ,<br>2. ERICK CHAVEZ,<br>3. MVT SERVICES, LLC d/b/a MESILLA VALLEY<br>   TRANSPORTATION,<br>4. MESILLA VALLEY TRANSPORTATION, INC.,<br>5. J.H. ROSE LOGISTICS, LLC,<br>6. RJ LEASING, LLC d/b/a/ IDEALEASE<br>   OF EL PASO,<br>7. VERDE LOGISTICS, LLC,<br>8. JOHN DOE TRANSPORT COMPANY,<br>9. JOHN DOE HIRING AGENT,<br>10. RANDY ROBBINS, and<br>11. FARMERS INSURANCE COMPANY<br>                Defendants. | Case No. 4:20-cv-00285-GKF-JFJ |

## PLAINTIFFS MATHEW WATERDOWN, SHERRY WATERDOWN, AND M.C. WATERDOWN'S DAUBERT MOTION TO EXCLUDE REPORT AND TESTIMONY OF DEFENDANTS' EXPERT WITNESS, DAVID DANAHER

The Plaintiffs, Matthew Don Waterdown, Sherry Waterdown, individually and as next best friends of M.C. Waterdown, move the Court to exclude the written report and testimony of David Danaher, the expert witness identified by Defendants, as it does not meet the standard of admissibility. In support of their motion, the Plaintiffs inform the Court as follows:

### INTRODUCTION

On or about May 13, 2018, Defendant Dagoberto Chavez made a u-turn in his semi-trailer ("semi") across four lanes of Eastbound traffic on Highway-412 from a right-hand turn lane cutting off the Ford F-150 driven by Matthew Waterdown. Danaher Rpt., p. 1, Exhibit 1. Mr. Waterdown's Ford collided with the semi. Although there is no question the semi driver made an

improper turn in violation of OKLA. STAT. tit. 47 § 11-604.A, the Defendants seek to admit the written report and testimony of David Danaher ("Danaher") to cast blame on Mr. Waterdown.

Defense counsel asked Danaher to determine if Mr. Waterdown could have avoided the accident. Danaher's report indicates that he used a 3D modelling of the accident scene and then conducted a time-space analysis to assign speeds and paths to the vehicles involved prior to impact. He concluded the Ford was approximately 484 feet or 5.5 seconds away from the point of impact just before the semi started its u-turn. He then determined the Ford swerved left approximately 2.7 seconds after the first lateral move of the semi. Danaher denotes the 2.7 seconds as Mr. Waterdown's perception-reaction time ("PRT").

Danaher also concluded the Ford traveled 93 additional feet between swerving and the start of the tire marks deposited on the roadway. Danaher Rpt., p. 14-15. The skid marks start 1.8 seconds or 131 feet from the point of impact. Danaher Rpt., p. 16.

Danaher asserted that the average PRT is 1.6 seconds and that eighty-five percent (85%) of drivers have a PRT of 2.2 seconds or better. Danaher Rpt., p. 16. Danaher cites Crash Safety Solutions Interactive Driver Response Research Software Version 2021.1 based on the research of Jeff Muttart for these numbers. Danaher explained that Muttart provides reaction times for specific scenarios like a daylight cutoff situation. Depo. Danaher, 52:10- 53:3.

Danaher also relied on the stopping distances provided in the Oklahoma Driver's Manual. Although the manual recognized there was no clear method for determining exact stopping distances, it recognized that some distance was lost to reaction time and estimated the following reaction and braking distances:

| Speed of vehicle | Reaction distance in feet | Braking distance in feet | Total stopping distance in feet |
| --- | --- | --- | --- |
| 60 mph | 132 | 120-140 | 252-272 |
| 70 mph | 154 | 163-327 | 317-481 |

2

Danaher Depo., Exhibit 6.  Danaher averages those numbers to establish distances for a vehicle traveling at 65 mph, like the Ford, as follows:

| Speed of vehicle | Reaction distance in feet | Braking time in feet | Total stopping time in feet |
|---|---|---|---|
| 65 mph | 143 | 142-284 | 285-427 |

Based on his analysis Danaher concludes:

- Had Mr. Waterdown reacted in 2.2 seconds, not 2.7 seconds, and began braking at the beginning of the swerve, the accident would have been avoidable, with the Ford stopping 63 feet short of impact.

- According to the 2017 Oklahoma Driver's Manual, Mr. Waterdown should have been able to stop his vehicle in 285-427 feet, which is 57-199 feet short of the point of impact.

Danaher Rpt., p. 17.  These conclusions fail to meet the standards of admissibility and should be excluded as discussed herein.

## ARGUMENTS AND AUTHORITIES

I. **The Court Should Exclude the Written Report and Testimony of Defendants' Expert Danaher Because They Fail to Meet the Standards of Admissibility.**

   a. **Standards of Admissibility for Expert Opinion and Testimony.**

Danaher's written report and proposed testimony fall short of the admissibility standard. A qualified expert may give opinion testimony only if the proposed opinion meets certain standards of suitability. FED. R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 595 (1993); *Alfred v. Caterpillar, Inc.,* 262 F.3d 1083, 1086 (10th Cir. 2001).  Specifically, under the applicable Federal Rule of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The proponent of the expert's analysis and testimony bears the burden to prove that said analysis and testimony meets the requirements of admissibility. *Alfred*, 262 F.3d at 1086. *See also U.S. v. Nacchio,* 555 F.3d 1234, 1251 (10th Cir. 2009).

In assessing the admissibility of an expert opinion, the court must employ a two-part test. First, the court must determine if the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *U.S. v. Nacchio,* 555 F.3d at 1241. The Court must then determine if the expert testimony is both reliable and relevant. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). Where the factual basis, data, principles, methods, or their application of an expert's testimony are called sufficiently into question, the trial judge must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The district court acts as a "gatekeeper" to limit expert testimony to that which is both relevant and reliable. *Alfred v. Caterpillar, Inc.,* 262 F.3d at 1086. "To be reliable under *Daubert,* an expert's opinion must be based on scientific knowledge and not merely a 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 595). The district court must assess the expert's underlying reasoning and methodology to determine if the expert's opinion is reliable. *U.S. v.*

*Nacchio*, 555 F.3d at 1241. The expert's underlying factual basis, data, principles, methods, and their application must be founded on "a relevant basis in the knowledge and experience of [the relevant] discipline." *Dodge v. Cotter Corp*., 328 F.3d at 1221. If the expert's analysis is deemed unreliable for any reason, the expert's testimony is inadmissible. *Id.*

Under this gatekeeper function, the district court must be satisfied that the expert's testimony is not only reliable but will be of assistance to the trier of fact in understanding the issues. *U.S. v. Nacchio*, 555 F.3d at 1241; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006.). "'The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact.'" *U.S. v. Hill,* 749 F.3d 1250, 1258 (10th Cir. 2014) (quoting *United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993)). The requirement that the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. *Daubert*, 509 U.S. at 591. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Importantly, the court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Schulenberg v. BNSF Ry. Co.,* 911 F.3d 1276, 1283 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S 136, 146, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997)). Accordingly, "wide latitude" is conferred upon the district court in its decision to exclude expert testimony. *Hall v. Conoco, Inc*., 886 F.3d 1308, 1311 (10th Cir. 2018).

As will be discussed in more detail below, Danaher's written report and testimony fail to meet the standards of admissibility.

5

### b. Danaher's Opinion Should Be Excluded Because He Lacks the Requisite Specialized Knowledge, Skill, Experience, Training, or Education to Opine as to the Required Stopping Distance or About the Appropriate Response to the Unexpected Hazard.

In the first step, the Court must assess whether Danaher possesses the requisite knowledge, skill, experience, training, or education to give the proffered opinions. Danaher's opinion criticizes both the speed and manner in which Mr. Waterdown reacted to what Danaher called the "unexpected hazard" of the semi making a u-turn from the righthand turn lane across four lanes of traffic. Depo. of Danaher, 77:18-20. Danaher concludes that if Mr. Waterdown reacted "0.5 seconds faster" and began braking "at the beginning of the swerve" he could have avoided the accident. He also concludes that Mr. Waterdown required only 285-427 feet to stop his vehicle. Danaher Rpt. p. 15-16. Danaher's conclusions and opinions are not based on Danaher's knowledge, skill, experience, training, or education.

### 1. Danaher Should Not Opine About Stopping Distances.

As an initial matter, Danaher did not use his knowledge skill, experience, training, or education to conclude that Mr. Waterdown needed 285-427 feet to stop his vehicle. Danaher Rpt. p. 15-16. Danaher relied on the 2017 Oklahoma Driving Manual for the stopping distance of 285-427 feet. At his deposition, Danaher admitted he did not know the methodology used in the Oklahoma Driver's Manual to determine the listed braking distances upon which he relied. Depo. of Danaher, 29:7-15; 31:12-18, Exhibit 6. He also does not know what factors affect where in the range of distances identified by the Oklahoma Driver's Manual a specific instance would fall. Depo. of Danaher, 31:12-18. Upon further consideration, Danaher pointed out that the range provided by the manual fell outside of the capabilities of most cars so that the extreme ends of the ranges were not actually attainable. Depo. of Danaher, 32:6-24, Exhibit 6.

Notably, the Oklahoma Driver's Manual did not list stopping distances for Mr.

6

Waterdown's speed of 65 mph. Depo. of Danaher, Exhibit 6. Danaher simply took the halfway point for the two nearest listed speeds, but by his own testimony he does not have the requisite knowledge, experience, training, and education to calculate where in the range a specific instance should fall. Depo. of Danaher, 30:6-21. Therefore, Danaher lacked a scientific basis for determine the stopping distance of an unlisted speed.

Danaher should not be allowed to opine as to the stopping distances provided by the Oklahoma Driver's Manual or the necessary stopping distance for Mr. Waterdown's vehicle.

### 2. Danaher Should Not Opine That Mr. Waterdown Should have Braked in Response to the Hazard.

Further, Danaher lacks the necessary knowledge, experience, training, and education to opine that Mr. Waterdown should have applied the brakes instead of changing lanes at the first lateral movement by the semi. Danaher recognized that Mr. Waterdown's reaction to the "first lateral move" of the semi was to change lanes from the southern lane to the northern lane. Depo. of Danaher, 75:3-8. Danaher admits he does not know if changing lanes was an appropriate response to Mr. Waterdown's lane being blocked but conceded "people do that all the time." Depo. of Danaher, 75:9-13.

Danaher based his opinions on perception-reaction time research performed by Muttart. Danaher Rpt., p. 15; Depo. of Danaher, 51:24-52:4. Muttart's research deals with the timing of a reaction to an unexpected hazard, but not what the reactions should be. According to Danaher, Muttart does not even take into account what the driver is reacting to. Depo of Danaher, 70:11-20. Nowhere in Danaher's written report or deposition did he provide any scientific basis or specialized knowledge to support a determination regarding what Mr. Waterdown should have done in response to the semi's first lateral move. Danaher should not be allowed to opine regarding the manner in which Mr. Waterdown should have reacted to the semi's first lateral movement.

7

Danaher lacks the requisite knowledge, skill, experience, training, or education to opine about the distance required for Mr. Waterdown to stop or that Mr. Waterdown should have applied the brakes instead of changing lanes in response to the first lateral move of the semi.

### c. Danaher's Opinion Should Be Excluded as Unreliable.

Danaher's proposed testimony and opinion is neither the product of reliable principles and methods nor based on a reliable application of the methods to the facts of the case. While the focus of the reliability analysis is on the methods, conclusions and methodology are not entirely distinct. Where the conclusions are too far removed from the facts and data, the expert opinion may be excluded. *Roe v. FCA US LLC*, 2022 U.S. App. LEXIS 21265, 12 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). In this case, Danaher attempts to require Mr. Waterdown to not only react more quickly but also to react differently without regard to the hazard he was reacting to.

#### 1. It is Unreliable to Measure the Reaction Time from the Semi's First Lateral Movement.

Danaher's opinion starts from an unreliable position. Danaher assumes that the reaction time should be measured from the "first lateral movement" of the semi. Depo. of Danaher, 17:14-24; 65:14-16; 74:9-14. Danaher testified that Muttart uses different PRTs for different reference points. Depo of Danaher, 64:1-65:18. Danaher specifically noted a different PRT would apply if we used the point at which the semi is partially across the road rather than the first lateral movement. Depo. of Danaher, 65:14-18. Danaher also admits Mr. Waterdown's reaction time would be much shorter if calculated from the point the semi crossed the entire lane and into the second lane of traffic. Depo. of Danaher, 70:21-71:8. Danaher provides no justification for use of the first lateral move in light of the admitted variable.

Instead, Danaher explained that whether only Mr. Waterdown's lane was blocked or the hazard obstructs the entire roadway, he would look at it the same under the Muttart analysis. Depo. of Danaher, 70:11-20. Danaher testified that Muttart's perception-reaction times do not take into account what the driver is reacting to. Depo of Danaher, 64:18-65:7. Danaher claimed Muttart just provides a baseline so that those specifics did not have to be considered in the analysis. Depo of Danaher, 72:18-74:22. Additionally, Danaher knows of no method that would allow him to calculate Mr. Waterdown's PRT from the moment the semi crosses from the far south lane of travel to the northern lane of travel. Depo. of Danaher, 70:21-71-10. However, this explanation contradicts Danaher's testimony acknowledging different PRT times for different reference points.

### 2. Danaher's Opinion As to How Mr. Waterdown Should React Is Unsuppported.

Moreover, Danaher's conclusion that the Ford could have avoided the accident requires Mr. Waterdown to not only respond 0.5 seconds faster to the hazard but to also respond differently. Danaher also needs Mr. Waterdown to apply the brakes instead of swerving to garner enough distance to predict the Ford can stop. The Muttart analysis does not take into account the type of reaction. Nothing in Danaher's Report would indicate that the expected response to the first lateral move would be to slam on the brakes. The conclusion is too far removed from the facts and data to be reliable.

### 3. Danaher's Stopping Distance Estimates Are Unreliable.

Further, Danaher's speculation as to the distance needed to stop the Ford is unreliable. Not only does the measurement start from the unreliable "first lateral movement," but it also lacks scientific support. The Oklahoma Drivers' Manual warns "There is no sure way to tell exactly how long it will take you to stop at a certain speed." Depo of Danaher, Exhibit 6. The manual also clarifies that the stopping distances provided are merely estimates. The actual stopping

distance depend not only on reaction time, but also on the weight of the vehicle, whether and road conditions, and the condition of the brakes. Id. Nothing in Danaher's report suggests that he considered the Ford's weight or condition of its brakes.

The Oklahoma Drivers Manual is not an empirical source of data. Danaher relied on the manual despite any understanding as to the methodology used to determine the listed braking distances. Depo. of Danaher, 29:7-15; 31:12-18, Exhibit 6. Danaher applied no intellectual rigor to the anecdotal data contained in the manual. Allowing Danaher to rely on the anecdotal data in the manual defeats the very purpose of FRE 702.

Moreover, Danaher's conclusion that the Ford would stop 63 feet before the point of impact is unsupported in his report. Danaher Rpt., p. 16. He merely states "under this scenario" meaning if the reaction time was 2.2 and the reaction was to apply the brakes instead of swerve, "the Ford would have stopped 63 feet prior to the point of impact." Id. Danaher's mere statement that the Ford could have stopped short of the incident if the reaction time were quicker and different is insufficient to meet the admissibility standards.

Therefore, Danaher's bare allegation that the Ford could have stopped is unreliable.

### 4. Danaher's Methods Do Not Apply to the Facts of This Case.

Further, the first lateral movement analysis cannot be reliably applied to the facts of this case. Danaher did not know and did not consider how the unexpected hazard was perceived by Mr. Waterdown when he formed his opinions. Depo. of Danaher, 96:12-19. Mr. Waterdown testified that he moved from the right lane to the left lane when he saw the semi start to pull out of the right turn lane. Depo of M. Waterdown, 46:13-17. At that time, Mr. Waterdown did not know the semi was going to continue to turn and cut across all lanes of traffic. Depo of M. Waterdown, 46:19-20. Despite reading Mr. Waterdown's testimony and knowing Mr. Waterdown did not

expect the semi to block the northern lane, Danaher stands by his original analysis. Depo of Danaher, 25:1-5.

Danaher's requirement that Mr. Waterdown apply the brakes instead of swerve is not consistent with the facts. The semi's first lateral movement would have been consistent with the semi merging back into the flow of traffic or the start of a wide right-hand turn. Neither of which would have blocked the entire roadway and would only require a swerve to the unobstructed lane to avoid an incident. Danaher admitted using the moment it was clear the entire roadway would be blocked would result in a shorter reaction time for Mr. Waterdown. Depo. of Danaher, 70:21-71:10. There is no justification for requiring Mr. Waterdown to brake at the "first lateral movement."

The Court should exclude Danaher's written report and testimony as not reliably applicable to the facts of this case.

### D. Danaher's Opinion Should Be Excluded Because It Is Not Helpful to the Trier of Fact.

The testimony and report of Mr. Danaher do nothing to assist the trier of fact to understand the matters at issue in the instant case. The sole intent of the expert's report and testimony is to raise the issue of comparative negligence. Comparative negligence only applies if Mr. Waterdown was negligent. *Breeden v. AVB Freight Sus., Inc..* 115 F.3d 749, 753 (10th Cir. 1997).

Oklahoma law defines negligence as a failure to exercise ordinary care that causes injury. OKLA. STAT. tit. 25, § 4; *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1118 (N.D. Okla. 2003). Ordinary care is that care of a reasonably careful person under the circumstances. *Craig v. Murphree*, 35 Fed. Appx. 765. The failure to use ordinary care must then "set[] in motion the chain of circumstances leading to the injury" for liability to attach. *Akin v. Mo. Pac. R.R. Co.*, 1998 OK 102, 977 P.2d 1040, 1054 (Okla. 1998).

Danaher's proposed opinion and testimony that 85% of drivers would have acted 0.5 seconds more quickly does not assist the jury in determining negligence. There is no data or fact that establish those that fall outside of the 85th percentile are not acting with ordinary care. A person is not negligent merely because they are not faster than 15% of drivers.

Likewise, there is no data or facts offered to prove the standard of care required Mr. Waterdown to brake at the first sign of lateral movement by the semi. Danaher has offered no data or knowledge to assert that a reasonably careful person would immediately brake under the circumstances. Rather, the proffered written report and testimony of Mr. Danaher are intended to impose a higher standard of care on Mr. Waterdown than that of ordinary care.

The Court should exclude Danaher's written report and testimony because it will not assist the trier of fact.

## II. Danaher's Opinion Should Be Excluded As More Prejudicial Than Probative.

Further, Danaher's opinion is more prejudicial than probative. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. In *Daubert*, the Supreme Court underscored the importance of a thorough Rule 403 balancing to the admissibility of expert testimony indicating that because expert evidence is often more misleading than other evidence, Rule 403 gives judges more power over experts than over lay witnesses. 509 U.S. at 595. The Court should exercise that power to exclude Danaher's written report and testimony.

Danaher's claim that 85% of drivers would have reacted 0.5 seconds sooner is not only unsupported but is highly prejudicial. That statistic, assuming it is even true, invades the province of the jury to determine what a reasonably careful person would do under the circumstances.

Simply because the statistic is being offered by an expert it is bolstered. This might suggest to the jury they must accept the statistic as the standard for ordinary care, and therefore, prejudicially confuse or mislead the jury.

The potential prejudice, confusion, or misleading of the jury is not outweighed by the probative value. As discussed above, the statistic is not relevant to the issue and facts of this case. Moreover, the faster reaction alone does not result in the conclusion that the Ford could stop. Rather, Danaher opines the Ford would also have to immediately brake. There is no indication that the 85% reacting 0.5 seconds faster would also brake immediately. Therefore, the Court should exclude all attempts by Danaher to reference or rely on the claim that 85% of drivers would have reacted 0.5 seconds faster.

**WHEREFORE**, the Plaintiffs, Matthew Don Waterdown, Sherry Waterdown, individually and as next best friends of M.C. Waterdown, request the Court exclude the proposed expert testimony of David Danaher and enter all other relief the Court deems just and equitable.

Respectfully submitted,

*/s/ Jaclynn R. Loney*
Christina M. Vaughn, OBA #21390
Jaclynn R. Loney, OBA #21269
**VIRIDIAN LEGAL SERVICES, PLLC**
1602 South Main
Tulsa, Oklahoma 74119
918.533.9635 Telephone
Christina@viridianlegal.com
jacki@viridianlegal.com

and

D. Mitchell Garrett, Jr., OBA #20704
**GARRETT LAW**
320 S. Boston, Suite 825
Tulsa, Oklahoma 74103
(918) 221-6190 Telephone
(918) 340-6799 Facsimile
mitchell@garrett.legal
***Attorneys for Plaintiffs***

# CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Mitchell Garrett , Jr. at mitchell@garrettlawcenter.com
Jason Goodnight  at jgoodnight@tulsalawyer.com
Jennifer Ary Brown at jary@tulsalawyer.com

*/s/ Jaclynn R. Loney*