IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW DON WATERDOWN, and SHERRY WATERDOWN, individually and as next friends of M.C. WATERDOWN, a minor, <br><br>Plaintiffs,<br><br>v.<br><br>DAGOBERTO CHAVEZ and MVT SERVICES, LLC d/b/a MESILLA VALLEY TRANSPORTATION,<br><br>Defendants. | Case No. 20-cv-00285-GKF-JFJ |

**ORDER**

This matter comes before the court on the *Daubert* Motion to Exclude Report and Testimony of Defendants' Expert Witness, David Danaher [Doc. 62] of plaintiffs Matthew Don Waterdown and Sherry Waterdown, individually and as next friends of M.C. Waterdown. For the reasons set forth below, the motion is denied in part and moot in part.

I.  **Factual Background/Procedural History**

This is a personal injury action arising from a motor vehicle accident which occurred on May 13, 2018. At the time of the accident, Mr. Chavez was operating a tractor trailer in the course and scope of his dispatch with MVT Services. Mr. Chavez was traveling eastbound on U.S. Highway 412 when he missed the exit onto Interstate 44. Approximately 5 miles past the missed exit, while attempting to determine how to get back on the correct route, Mr. Chavez pulled the tractor trailer over into the right turn lane at the four-way intersection of Highway 412 and County Road 4115. In an attempt to reverse his direction and travel westbound on Highway 412 to return to the exit he missed, Mr. Chavez turned left from the right turn lane across the eastbound portion of Highway 412 and into the cut in the center median of Highway 412.

At this same time, plaintiff Matthew Waterdown was driving eastbound on Highway 412 in the outside lane of travel with plaintiffs Sherry Waterdown and M.C. Waterdown as passengers. When Mr. Waterdown saw the tractor trailer pull onto the highway, he changed lanes from the outside lane of travel to the inside lane of travel. As Mr. Chavez continued to pull out in front of the Waterdowns' vehicle, Mr. Waterdown applied his brakes and his vehicle swerved towards the median. The Waterdowns' vehicle slid sideways and the passenger side of the Waterdowns' vehicle slid into Mr. Chavez's trailer.

In this litigation, the Waterdowns allege that Mr. Chavez negligently caused the collision. In advance of trial, Mr. Chavez and MVT Services retained David A. Danaher, P.E., of Kineticorp, to investigate the accident and offer opinions as to whether it could have been avoided. *See generally* [Doc. 62-1]. Mr. Danaher's report is fairly summarized by his opinion that, "[h]ad Mr. Waterdown reacted in 2.2 seconds, not 2.7 seconds, and began braking at the beginning of the swerve, the accident would have been avoidable, with the Ford [F-150] stopping 63 feet short of impact" and "[a]ccording to the 2017 Oklahoma Driver's Manual, Mr. Waterdown should have been able to stop his vehicle in 285-427 feet, which is 57-199 feet short of the point of impact." [*Id.* at p. 17].

In the motion, the Waterdowns seek to exclude Mr. Danaher's testimony during trial of this matter.[1] [Doc. 62]. Mr. Chavez and MVT Services responded in opposition. [Doc. 65]. The Waterdowns filed a reply. [Doc. 74].

Neither party requests a hearing on the motion. *See generally* [Doc. 62; Doc. 65]. Based

---

[1] The Waterdowns also seek to exclude Mr. Danaher's report. [Doc. 62]. However, in response, Mr. Chavez and MVT Services state that they do not intend to introduce Mr. Danaher's report during trial of this matter, as the report is inadmissible hearsay. [Doc. 65, p. 1 n.1]. Thus, insofar as the motion seeks to exclude Mr. Danaher's report, the motion is moot.

on its review, the court concludes that the motion may be resolved on the briefs and that a hearing is not necessary.[2]

## II. *Daubert* Standard

Pursuant to Federal Rule of Evidence 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes on the trial court an important gate-keeping obligation, "to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Thus, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). To determine whether an expert's opinion is admissible, the district court must generally undertake a two-step analysis: (1) first, to determine "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion," and (2) second, to determine "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology[.]" *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th

---

[2] *Daubert* does not mandate a hearing and the decision whether to hold a hearing rests in the court's discretion. *United States v. Nacchio*, 555 F.3d 1234, 1253-56 (10th Cir. 2009); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (*Daubert* hearing "is not specifically mandated").

Cir. 2015) (internal quotations omitted).

However, "[t]he 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala,* 303 F.3d 1207, 1219 (10th Cir. 2002); *see also* Fed. R. Evid. 702(a) (emphasis added) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*."). "When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." *Wilson,* 303 F.3d at 1219 (quoting *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir. 1971)). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

### III.   Analysis

The Waterdowns raise four general objections to Mr. Danaher's opinions: (1) Mr. Danaher's opinions are not based upon his specialized knowledge, skill, experience, training, or education, and therefore he cannot opine as to the required stopping distance or appropriate response; (2) Mr. Danaher's opinions are unreliable; (3) Mr. Danaher's opinions are not helpful to the trier of fact; and (4) Mr. Danaher's opinions are more prejudicial than probative. The court separately analyzes each objection. Accordingly, prior to considering the Waterdowns' specific objections, it is necessary to consider Mr. Danaher's methodology.

#### A.   Methodology

Mr. Danaher states that Kineticorp reviewed the police report, photographs (including of tire marks), and videos. Additionally, on April 16, 2021, Kineticorp performed a scene inspection.

[Doc. 62-1, pp. 1, 11-12]. While at the scene, Kineticorp performed a 3D laser scan to a create a 3D model of the incident scene. A 3D model of exemplar vehicles (an International tractor, utility semi-trailer, and 2007 Ford F-150) were also created. [*Id.* at pp. 3-8]. Kineticorp then analyzed the sequence of events using the completed 3D environment, as well as the damage to the subject vehicles, to determine the impact configuration of the collision. [*Id.* at pp. 10-13].

Utilizing these models, Kineticorp performed an analysis of the vehicles' speed and paths of travel prior to impact to determine the recognition distance and perception-reaction time for Mr. Waterdown. The average speed of the tractor-trailer was calculated using the Drive Cam video included in the International tractor, which demonstrated the speed and position of the tractor immediately prior to impact. [*Id.* at p. 14]. The video also included audio indicating that, 1.8 seconds to 2.0 seconds prior to impact, Mr. Waterdown began braking. [*Id.*]. Based on the video, time and position of impact, and pre-impact braking, Mr. Danaher determined the Ford's speed both prior to braking and at impact. [*Id.*].

Mr. Danaher then consulted perception-reaction time research performed by Jeff Muttart, which indicates that the average response time of a person is approximately 1.6 seconds, and that eight-five percent of people react within 2.2 seconds. [*Id.* at p. 15]. Based on this data, Mr. Danaher performed an analysis to determine whether or not Mr. Waterdown could have avoided the collision had he reacted within the eighty-fifth percentile perception-reaction time of 2.2 seconds. In the scenario, Mr. Waterdown still swerved and decelerated at the same rate, but with a reaction time 0.5 seconds faster and braking at the beginning of the swerve. [*Id.* at p. 16]. Based on his analysis, Mr. Danaher concluded that, had Mr. Waterdown reacted with an eighty-fifth percentile perception-reaction time and began braking at the start of the swerve, the accident would have been avoided. [*Id.*].

5

Mr. Danaher also analyzed whether Mr. Waterdown could have avoided the accident utilizing perception/reaction times, as well as stopping distances, included in the Oklahoma Driver's Manual. [*Id.*]. To do so, Mr. Danaher consulted data reflecting estimated emergency stop distance included in the Driver's Manual, and averaged the distance it would take a vehicle traveling 60 miles per hour and one traveling 70 miles per hour to stop. Combining this distance with the 1.16 second perception-reaction time indicated by the Driver's Manual, Mr. Danaher concluded that, had Mr. Waterdown begun braking when the International tractor began its turn, he could have avoided the collision. [*Id.*]. With this background in mind, the court considers the Waterdowns' objections.

B. *Requisite Knowledge, Skill, Experience, Training, or Education*

The Waterdowns first contend that Mr. Danaher did not use his knowledge, skill, experience, training, or education to formulate his opinions regarding stopping distance but, instead, improperly relied on the 2017 Oklahoma Driver's Manual.

The Waterdowns first point out that Mr. Danaher does not know the methodology utilized by the Oklahoma Department of Public Safety to determine the braking distances included in the 2017 Oklahoma Driver's Manual. However, based on the court's research, the Oklahoma Driver's Manual and similar publications are of the kind that experts in the field of accident reconstruction would reasonably rely on in forming their opinions. *See generally Asbury v. MNT, Inc.*, No. 12-252-KG-RHS, 2014 WL 6674475, at \*\*16-17 (D.N.M. Aug. 6, 2014); *BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. 06-1076-MCA-LFG, 2009 WL 4279843, at \*11 (D.N.M. Feb. 12, 2009); Fed. R. Evid. 703. Further, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination." *Chavez v. Marten Transport, Ltd.*, No. 10-0004-MV-

RLP, 2012 WL 988011, at *3 (D.N.M. Mar. 22, 2012) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 970 (8th Cir. 1996)); *see also Ortega v. City & Cnty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at **4-5 (D. Colo. Feb. 5, 2013).

Next, the Waterdowns assert that Mr. Danaher should not be permitted to opine that Mr. Waterdown *should have* braked in response to Mr. Chavez's maneuver as Mr. Danahger lacks sufficient knowledge, experience, training, and education to opine as to appropriate reactions.[3] However, the court does not construe Mr. Danaher's expert report and testimony to opine that Mr. Waterdown *should have* applied the brakes instead of changing lanes at the first lateral movement by the International tractor. Rather, Mr. Danaher opines that, *if* Mr. Waterdown would have immediately begun braking, the accident would have been avoidable. This is an important distinction. Mr. Danaher is a physical engineer with twenty-years experience. As such, he is qualified to opine as to perception-reaction times, impact speed, time-space analyses, and his ultimate conclusion that the accident was avoidable had Mr. Waterdown immediately begun braking.[4]

For the foregoing reasons, the court concludes that Mr. Danaher is sufficiently qualified to offer opinions regarding accident reconstruction and avoidance during trial of this matter.

---

[3] Although the Waterdowns object to Mr. Danaher's qualification to opine as to the appropriate reaction by Mr. Waterdown to Mr. Chavez's maneuver, the Waterdowns do not argue that Mr. Danaher is not a qualified accident reconstructionist.

[4] In this section, the Waterdowns also criticize Mr. Danaher's reliance on the Muttart research, as the research does not relate to what a reaction *should be*. Again, Mr. Danaher does not offer any opinions as to how Mr. Waterdown should have reacted. Further, the Muttart research is of the kind that experts in the field of accident reconstruction would reasonably rely on in forming their opinions. *See* Fed. R. Evid. 703. In fact, the court notes that Oklahoma City Police Department Sergeant Terry Harrison, plaintiffs' expert, also relies on the Muttart research. *See* [Doc. 60-1, p. 6].

*C.     Reliability*

The Waterdowns next argue that Mr. Danaher's opinions should be excluded as unreliable. However, the Waterdowns' objections in this regard entirely relate to the factual underpinnings of Mr. Danaher's report. Objections to the factual underpinnings of an expert's opinions go to the weight, not the admissibility, of the testimony. *See Bautista v. MVT Servs., LLC*, No. 16-CV-1086-NYW, 2017 WL 6054888, at *5 (D. Colo. Dec. 7, 2017).

Further, as set forth above, the court has reviewed Mr. Danaher's methodology. Based on its review, the court is persuaded that Mr. Danaher's opinions are the product of reliable principles and methods.

*D.     Helpfulness to the Trier of Fact*

As set forth above, "[t]he 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson,* 303 F.3d at 1219; *see also Thompson v. State Farm Fire & Cas. Co*., 34 F.3d 932, 941 (10th Cir. 1994) (quoting *Daubert,* 509 U.S. at 591) ("It must be remembered that Fed. R. Evid. 702 includes a requirement that the testimony will 'assist the trier of fact to understand or to determine a fact in issue,' a requirement that 'goes primarily to relevance.'"). Having reviewed the Waterdowns objections in this regard, it is clear that plaintiffs do not agree with Mr. Danaher's opinions. However, disagreement with an expert's opinions does not render those opinions unreliable or unhelpful.

Here, a dispute of fact exists as to how and why the collision occurred. Mr. Danaher's specialized knowledge will be helpful to the jury in understanding the evidence presented, particularly considering that the Waterdowns strongly contest that Mr. Waterdown was at-fault.[5]

---

[5] Insofar as the Waterdowns express concern in this section that Mr. Danaher's testimony is "intended to impose a higher standard of care on Mr. Waterdown than that of ordinary care," the court notes that it will instruct the jury as to the applicable law, including the standard of care.

*Bautista,* 2017 WL 6054888, at *5.

  E.  *Prejudicial Versus Probative Value*

  Finally, the Waterdowns assert that Mr. Danaher's opinion is more prejudicial than probative and therefore must be excluded. Pursuant to Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

  For the reasons set forth above, Mr. Danaher's opinions are relevant to how and why the collision occurred.[6] Further, any prejudice can be alleviated through vigorous cross-examination, testimony of plaintiffs' expert, and appropriate jury instructions. Thus, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or juror confusion, and Rule 403 is inapplicable.

    **IV.**  **Conclusion**

  WHEREFORE, the *Daubert* Motion to Exclude Report and Testimony of Defendants' Expert Witness, David Danaher [Doc. 62] of plaintiffs Matthew Don Waterdown and Sherry Waterdown, individually and as next friends of M.C. Waterdown, is denied in part and moot in part.

  IT IS SO ORDERED this 4th day of December, 2022.

                 */s/ Gregory K. Frizzell*
                 Gregory K. Frizzell
                 United States District Judge
                 Northern District of Oklahoma

---

Thus, any concerns may be alleviated through jury instructions.

[6] Insofar as the Waterdowns criticize Mr. Danaher's reliance on the Muttart research, the court again notes that the research of the sort reasonably relied on by other experts in the field, including plaintiffs' own expert.